**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-CV-00168-WJM-NYW

UNITED STATES OF AMERICA,

     Plaintiff,

      v.

PIONEER NATURAL RESOURCES COMPANY, and
PIONEER NATURAL RESOURCES USA, INC.,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

     This matter comes before the court on Defendants Pioneer Natural Resources Company ("Pioneer Natural Resources") and Pioneer Natural Resources USA, Inc. ("Pioneer-USA") (collectively, "Defendants") "Partially Unopposed Motion for Leave to Amend their Pleadings" ("Motion to Amend"). [#84, filed April 3, 2018]. The Motion to Amend is before the undersigned Magistrate Judge pursuant to the Order Referring Case dated February 3, 2017 [#17] and the memorandum dated May 7, 2018 [#94]. After carefully reviewing the Motion to Amend, the entire case file, and the applicable case law, I respectfully **RECOMMEND** that the Motion to Amend be **GRANTED**.[1]

---

[1] Local Rule 72.3 defines "[d]ispositive motions" to include motions to amend. *See* D.C.COLO.LCivR 72.3(a).

# BACKGROUND

Plaintiff United States of America initiated this civil action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq*., seeking to recover from Defendants certain costs incurred in response to the release (or threatened release) of hazardous waste at the Nelson Tunnel/Commodore Waste Rock Pile Superfund Site, located in Mineral County, Colorado. [#1]. Defendants filed their respective Answers on March 20, 2017. [#20; #21]. On April 19, 2017, this court presided over a Scheduling Conference and entered a Scheduling Order directing the Parties, in relevant part, to amend pleadings on or before September 5, 2017, complete written discovery by January 15, 2018, and complete non-written discovery by September 14, 2018. [#23; #24].

On May 19, 2017, the Government filed an early Motion for Partial Summary Judgment on the issue of Defendants' corporate successor liability. [#46]. On September 5, 2017, following the briefing of the early Motion for Partial Summary Judgment and with the Government's consent, Defendants filed respective Amended Answers and asserted counterclaims for declaratory judgment for the first time. [#61; #62]; *see* [#63]. The Government filed Answers to the counterclaims on November 6, 2017. [#70; #71]. Defendants subsequently filed the Motion to Amend, seeking leave to file amended counterclaims and revised affirmative defenses and defenses, and to revise two responsive paragraphs.

On April 18, 2018, days before the Government's response to the Motion to Amend was due, the court granted the Government's early Motion for Summary Judgment, finding that Pioneer Natural Resources is a successor to the CERCLA liabilities of Pioneer Nuclear, Incorporated ("PNI"), and that Pioneer-USA is a successor to the CERCLA liabilities of Mesa

Operating Limited Partnership ("MOLP"). *See* [#88]. The Government did not ultimately respond to the Motion to Amend.

## ANALYSIS

### I. Applicable Law

Defendants filed the Motion to Amend after the expiration of the deadline for amendment of pleadings as specified in this court's Scheduling Order. Therefore, this court considers the Motion to Amend pursuant to a two-step inquiry. First, the court considers whether the moving party demonstrates good cause pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. *See Gorsuch Ltd. B.C. v. Wells Fargo Nat'l Bank*, 771 F.3d 1230, 1242 (2014). Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000).

If the moving party can demonstrate good cause, the court then weighs whether the amendment should be allowed under Rule 15(a), which provides that "the court should freely give leave when justice so requires." *Gorsuch*, 771 F.3d at 1242. Whether to allow amendment is within the trial court's discretion. *Burks v. Oklahoma Publ'g Co.,* 81 F.3d 975, 978–79 (10th Cir. 1996). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993). A general presumption exists in favor of allowing a party to

amend its pleadings, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), and the non-moving party

bears the burden of showing that the proposed amendment is improper. *Jefferson County Sch.*

*Dist. No. R-1 v. Moody's Investor's Services, Inc.,* 175 F.3d 848, 859 (10th Cir. 1999).

## II.    **Application**

According to the certificate of conferral in the Motion to Amend, the Government does

not oppose the proposed amendments to Defendants' counterclaims, affirmative defenses, and

defenses, [#84 at 1], and thus this court RECOMMENDS that those amendments be accepted.

Defendants also seek leave to "conform two paragraphs," paragraphs 12 and 13, "to the

facts developed in discovery."    [*Id.* at 2].   Defendants' Answers contain an almost identical

Paragraph 12, which states that the respective Defendant:

> denies Plaintiff's allegation in the first sentence of Paragraph 12 that the hydraulic
> structures are or were "makeshift" or that the discharge system was "pieced
> together." Otherwise, Defendant…admits the allegations in Paragraph 12.

[#61 at ¶ 12]; *see* [#62 at ¶ 12].  Defendants propose amending the paragraph to add the sentence

that each Defendant "further denies that Mesa conducted mining operations at the OU1 Site."

[#84-1 at ¶ 12; #84-2 at ¶ 12].

Defendants' Answers similarly contain an almost identical Paragraph 13, which is

directed at the Government's allegations of successor liability:

> Defendant [Pioneer Natural Resources / Pioneer-USA] denies that PNI is a
> predecessor of PNRC. Defendant [Pioneer Natural Resources / Pioneer-USA]
> admits that PNR-USA is the corporate successor to MLP. Defendant [Pioneer
> Natural Resources / Pioneer-USA] admits that PNI conducted limited operations,
> primarily consisting of mineral exploration activities, at the Commodore Mine
> between 1982 and 1986. Defendant [Pioneer Natural Resources / Pioneer-USA]
> denies that Mesa conducted mining operations at the OU1 Site **between 1986 and**
> **1989**. Defendant [Pioneer Natural Resources / Pioneer-USA] denies that PNI and
> Mesa used the Commodore Mine Dump as the hub of their mining operations and
> that PNI or Mesa ever conducted mining operations on or below the Commodore

Mine Dump. Defendant [Pioneer Natural Resources / Pioneer-USA] admits that PNI stabilized cribbing on the upper portion of the Commodore Mine Dump, and used the surface of the Commodore Mine Dump as a work area. Defendant [Pioneer Natural Resources / Pioneer-USA] denies that PNI used the surface of the Commodore Mine Dump to dump mine waste on the side of the Commodore Mine Dump. Defendant [Pioneer Natural Resources / Pioneer-USA] admits that PNI monitored the condition of the cribbing and water conveyance system and took reasonable steps to maintain the integrity of the system, but Defendant [Pioneer Natural Resources / Pioneer-USA] denies the remaining allegations in Paragraph 13's fourth and fifth sentences. Defendant [Pioneer Natural Resources / Pioneer-USA] admits that Mesa retained Steffen Robertson & Kirsten Consulting Engineers ("SRK") in 1988 to provide advice regarding how to break out, discuss, and assign gross estimated costs to reclamation at the Commodore Mine Dump and other mine sites to meet the intent of the Colorado Mined Land Reclamation Act in the event that active mining operations were to be commenced within the scope of the Colorado Mined Land Reclamation Act; and that Mesa retained SRK in 1988 to provide advice regarding how to address potential reclamation scenarios for historically discontinued mine operations. Defendant [Pioneer Natural Resources / Pioneer-USA] also admits that SRK estimated mine-dump regrading and stream-channeling costs at $300,000. Defendant [Pioneer Natural Resources / Pioneer-USA] denies the remaining allegations and characterizations in Paragraph 13's sixth, seventh and eighth sentences. If Plaintiff has otherwise asserted any allegations in Paragraph 13, then Defendant [Pioneer Natural Resources / Pioneer-USA] denies such allegations. Defendant [Pioneer Natural Resources / Pioneer-USA] states that CoCa Mines, Inc., or its subsidiary, Creede Resources Inc., or both (collectively, "CoCa Mines") retained all rights to the Commodore Mine Dump materials under the Exploration Agreement and Option dated September 9, 1982, and the Development and Operating Agreement dated June 1, 1983 (the "1983 Development and Operating Agreement"), and PNI had no ownership interest in or contractual responsibility for the materials contained in the Commodore Mine Dump other than waste rock generated by its own operations. To the extent that Plaintiff characterizes the 1983 Development and Operating Agreement as a "joint venture" or the relationship among the parties to the 1983 Development and Operating Agreement as a "joint venture," Defendant [Pioneer Natural Resources / Pioneer-USA] denies such characterization. Moreover, Defendant [Pioneer Natural Resources / Pioneer-USA] states that when MOLP re-conveyed the mine properties to Coca Mines in 1989, it paid $1,000,000 toward the cost of mine-dump regrading and stream channelization at and around the Commodore Mine Dump, which was an amount substantially exceeding the amount necessary to reclaim the limited activities performed by PNI and MOLP on the Commodore Mine Dump.

[#61 at ¶ 13; #62 at ¶ 13]. Defendants propose removing the clause, "between 1986 and 1989," emphasized above in bold. *See* [#84-1 at ¶ 13; #84-2 at ¶ 13]. Defendants also propose adding the following sentence after the statement that "Mesa retained SRK in 1988 to provide advice regarding how to address potential reclamation scenarios for historically discontinued mine operations":

> The tasks described in relevant portions of the resulting document were not requirements. They were "potential reclamation scenarios" for various mines in the Creede Mining District, in the event MLP determined to make application to the Colorado Mined Land Reclamation Division for any permits that might be required by that agency. Such application would have only been made if MLP or the Mesa/CoCa Mines venture determined to continue with a mining joint venture, and that venture never materialized. Moreover, as acknowledged by the author in the "Background" section, MLP had no rights to process mine waste materials described in the document (which were reserved to Coca Mines), and had no responsibility for reclamation of those materials, other than "some waste rock created during portal rehabilitation at the Commodore and Amethyst Mines."

[*Id.*] Finally, Defendants would add the following sentence to conclude the paragraph:

> When MOLP spent $1,000,000 to fund the continued maintenance and rehabilitation of the flume system, its actions reflect an understanding that the payment would have easily covered the cost of a permanent drainage channel.

[*Id.*].

Defendants assert that good cause exists to amend these paragraphs because the revisions conform the paragraphs to Defendants' discovery responses and, "in doing so, promote the objective of deciding this case on its merits in light of the true historical facts of the case." [#84 at 2]. Defendants further assert that the revisions are "important to the correct resolution of this case," in that they directly address and refute the Government's allegations "that Mesa Operating Limited Partnership 'conducted mining operations' in the relevant area, and could have 'avoided' a 'washout' of the Commodore Waste Rock Pile that occurred nearly 16 years after

Mesa Operating Limited Partnership terminated its operations and sold its assets in the relevant area." [*Id.*] In addition, Defendants contend that the proposed amendments do not prejudice the Government because, while the deadline for written discovery has passed, the discovery deadline otherwise does not expire until September 2018, thus providing the Government with "ample time to probe the revisions." [*Id.* at 3]. Defendants further assert that the factual bases for the revisions arose during the course of written discovery and have been disclosed to and discussed with the Government. [*Id.*]

While the certificate of conferral asserts that the Government opposes these amendments, the Government did not file a response to the Motion to Amend. Defendants do not specifically address what precluded them from moving earlier to amend their Answers, but they do state that the factual bases for the proposed revisions were discovered during the exchange of written discovery, and review of the docket shows that the Parties filed multiple stipulations and motions seeking to extend the time for responding to written discovery requests, with the final request extending a deadline to February 23, 2018. *See* [#69; #72; #74; #76; #78]. Defendants filed the Motion to Amend on April 3, 2018. And, as noted above, prior to the response deadline the court ruled as a matter of law that Pioneer Natural Resources is a successor to the CERCLA liabilities of PNI and that Pioneer-USA is a successor to the CERCLA liabilities of MOLP. *See* [#88]. I find good cause to amend under Rule 16(b).

Additionally, I agree with Defendants that the proposed amendments should cause no prejudice. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006) ("The…most important factor in deciding a motion to amend the pleadings" under Rule 15(a), "is whether the amendment would prejudice the nonmoving party."). Four months remain in discovery; and the

Government, which has the burden of showing that the proposed amendments are improper, has not articulated (1) what prejudice would result from the amendments, or (2) how that prejudice could not be cured through additional discovery. Accordingly, I respectfully RECOMMEND that the Motion to Amend be GRANTED.

## CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that:

1. Defendants' "Partially Unopposed Motion for Leave to Amend their Pleadings" [#84] be **GRANTED**; and

2. Defendants file clean versions of the proposed Second Amended Answers within one business day of the court's ruling, should the court accept this Recommendation. [2]

---

[2] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED: May 16, 2018                    BY THE COURT:

_____
United States Magistrate Judge