IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-0168-WJM-NYW

UNITED STATES OF AMERICA,

    Plaintiff/Counterclaim Defendant,

v.

PIONEER NATURAL RESOURCES COMPANY, and
PIONEER NATURAL RESOURCES USA, INC.,

    Defendants/Counterclaim Plaintiffs.

## ORDER ENTERING CONSENT DECREE

Before the Court is the United States' Unopposed Motion to Enter Consent Decree ("Motion"). (ECF No. 210.) For the reasons discussed below, the Court will grant the Motion and approve and enter the proposed Consent Decree (ECF No. 202-1).

## I. BACKGROUND

### A. Factual Background

The Court previously set forth the basic Site history in an Order granting the United States' early motion for partial summary judgment on corporate successor liability. *See United States v. Pioneer Nat. Res. Co.*, 309 F. Supp. 3d 923 (D. Colo. 2018); (ECF No. 88). The Court presumes familiarity with that Order.[1]

### B. Procedural History

The United States filed this action against Defendants on January 19, 2017, to

---

[1] The Court also incorporates any abbreviations as set forth in that Order.

recover costs incurred in connection with response actions at OU1 only. (ECF No. 1 ¶ 53.) Defendants filed a counterclaim against the United States, alleging that the United States is a potentially responsible party ("PRP") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9605, and therefore responsible for response costs. (ECF Nos. 61, 62; *see also* ECF Nos. 114 and 115.) In May 2017, the United States filed an early partial motion for summary judgment on the liability of Defendants as successors in interest to prior site operators, which the Court granted. (ECF Nos. 46 and 88.) The Parties have stipulated that each is a covered person under CERCLA § 107(a). (ECF No. 151.)

On February 28, 2019, after the Parties had briefed their motions for partial summary judgment, the Court granted a joint motion to stay the litigation pending settlement negotiations (ECF Nos. 168 and 170) and extended the stay as the settlement negotiations progressed (ECF Nos. 178, 181, 183, and 185).

On November 25, 2019, the United States lodged a proposed Consent Decree with the Court (ECF No. 188) and after public comment, the United States moved for entry of the proposed Consent Decree (ECF No. 193). On April 7, 2020, the Court denied entry of the proposed Consent Decree and lifted the previous stay of litigation. (ECF No. 194.)

On September 9, 2020, the United States again lodged with the Court a proposed Consent Decree that fully resolves the claims and counterclaims in this matter. (ECF Nos. 202 and 202-1.) On September 15, 2020, the Federal Register Notice was published (*see* 85 Fed. Reg. 57251 (Sept. 15, 2020)). The United States provided a 30-day public comment period. The United States received two public

2

comments—one in support of entry of the proposed Consent Decree from the State of Colorado (ECF No. 210-5) and one objecting to entry from the City of Creede (ECF No. 210-6). On November 17, 2020, the United States filed its Motion, and Defendants filed a response in support of the Motion thereafter. (ECF Nos. 210 and 211.)

## II. STANDARD OF REVIEW

A court may either approve or deny a consent decree as a whole, and may not change the terms of the parties' agreement. *United States v. Colorado*, 937 F.2d 505, 509–10 (10th Cir. 1991). In reviewing a consent decree, the district court "must ensure that the agreement is not illegal, a product of collusion, or against the public interest. The court also has the duty to decide whether the decree is fair, adequate, and reasonable before it is approved." *Id.* at 509. Review of the decree "should be guided by the general principle that settlements are encouraged." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999); *see also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990).

This presumption in favor of settlement "is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir.1991). Under these circumstances, "broad deference should be afforded to EPA's expertise," *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996), and the "district court must refrain from second-guessing the executive branch," *Cannons Eng'g Corp.*, 899 F.2d at 84; *see also Colorado v. United States*, 2013 WL 6858759, at *2 (D. Colo. Dec. 30, 2013) ("[A]lthough a district may not simply rubber stamp a consent

3

decree, it must defer heavily to the parties' agreement and the EPA's expertise" (internal quotation marks omitted)). Moreover, because the consent decree represents a settlement, not a judgment after trial on the merits, a district court may take into account "reasonable discounts for litigation risks, time savings, and the like that may be justified." *United States v. Davis*, 261 F.3d 1, 26 (1st Cir. 2001) (citation omitted).

### III. ANALYSIS

Under the proposed Consent Decree, Defendants agree to pay $5.775 million to EPA within thirty days after entry of the Consent Decree by the Court. (ECF No. 202-1 ¶ 4.) The United States, on behalf of the Departments of the Interior and Agriculture ("Settling Federal Agencies") as potentially responsible parties with alleged liability stemming from past or current federal ownership of portions of land underlying the Site, agrees to pay $425,000 to EPA, as soon as reasonably practicable. (*Id.* ¶ 8(a).) In exchange, the Parties agree to certain covenants not to sue. (*Id.* ¶¶ 15–16, 19–20.) In addition, EPA reserves its rights against the Settling Federal Agencies relating to future response actions at OU2. (*Id.* ¶ 18.)

The 2020 Consent Decree also provides additional discussion concerning the operational history at the Site and greater mining complex, alleged Site activities conducted by the Predecessor Entities, the Parties' respective positions on potential liability at OU1 and OU2, the inner mine workings and hydrological connections related to OU2, Site investigations and response actions, and funding sources for future response activities at the Site. (*Id.* § 1.)

The Court, having carefully evaluated the Motion, Defendants' response filed in support of the Motion, public comments submitted by the State of Colorado and City of

4

Creede regarding the proposed Consent Decree, and the proposed Consent Decree itself, concludes that the Consent Decree is fair, adequate, and reasonable, and is not illegal, a product of collusion, or against the public interest.

**A.     The Consent Decree Is Procedurally Fair and Not a Product of Collusion**

The Court finds that the negotiations were candid and in good faith; the proposed Consent Decree is fair and not a product of collusion.[2]  As represented by the United States in its Motion, the agreement reflected in the proposed Consent Decree was reached after six years of arm's-length negotiations, including mediation, where historical documentation and other information related to the Parties' opposing positions on OU1 and OU2 liability was exchanged.  (*See* ECF No. 210.)  The Parties were each advised by experienced counsel and assisted by technical advisors with substantial Site knowledge, as well as third-party consultants and expert witnesses.  (*Id.*)  Lastly, extensive litigation was conducted prior to reaching resolution, including discovery concerning OU1 and briefing of motions for summary judgment.  (*Id.*)

**B.     The Consent Decree Is Substantively Fair, Adequate, and Reasonable**

The Court also finds that the proposed Consent Decree is substantively fair, reasonable, and equitable because it reflects the Parties' careful and informed assessment of the merits of each other's claims, each party's relative contribution to the harm at the Site, including at OU2, and the costs associated with further litigating this case.[3]  The Parties have asserted substantially different positions during contested

---

[2] In considering the fairness of a consent decree, the court should "consider the extent of discovery that has taken place, [ ] stage of the proceedings, [ ] want of collusion in the settlement and the experience of plaintiffs' counsel." *North Carolina*, 180 F. 3d at 581.

[3] In evaluating substantive fairness and reasonableness, a court considers whether the consent decree sufficiently compensates the public for the cost of remedial measures and reflects the relative strength of the parties' litigating positions. *United States v. Telluride Co.*,

litigation, including different positions concerning the environmental harm and apportionment of liability. (*See* ECF Nos. 153, 157, and 159.) The record also includes substantive discussion on the relative strength of the parties' differing positions and various litigation risks related to OU1 and OU2 response cost liability. (*See* ECF Nos. 210 and 211.) Under these particular circumstances, the United States reasonably determined that the settlement adequately compensates the public—particularly when weighed against the costs and time of litigation.

**C.     The Consent Decree Is Not Illegal or Against the Public Interest**

The Court finds that the proposed Consent Decree is not illegal or against the public interest. The Consent Decree was entered into pursuant to statutory authority delegated to officials at the U.S. Department of Justice, U.S. Environmental Protection Agency, and U.S. Forest Service.

Further, the proposed Consent Decree is consistent with the underlying policies and purposes of CERCLA and allows resources to be put towards ongoing cleanup efforts rather than transaction and litigation costs.[4] In addition, the public was given proper notice and alerted that the proposed decree resolved alleged Site-wide liability. *See* 85 Fed. Reg. 57251 (Sept. 15, 2020); (ECF No. 210). During the public comment period, two comments were received: one in support of entry of the proposed Consent Decree from the State of Colorado (ECF No. 210-5) and one objecting to entry from the

---

849 F. Supp. 1400, 1402 (D. Colo. 1994). Substantive fairness overlaps with the requirement that the decree be equitable, and in assessing these equities, a court should also consider whether the proposed settlement is reasonable in light of the circumstances of the case. *See Colorado*, 2013 WL 6858759, at *2.

[4] *See Cannons Eng'g Corp.*, 899 F.2d at 90–91 (CERCLA's primary objectives include prompt cleanup of hazardous waste and ensuring that the costs of remedying the harm are borne by responsible parties).

City of Creede (ECF No. 210-6). Among other things, the City of Creede's comments raise concerns about an alleged lack of information in support of the proposed Consent Decree and the inclusion of OU2 in the settlement. The United States represents that after careful consideration of the points raised in Creede's comment, the comment did not disclose facts or considerations that indicate the Consent Decree is inappropriate, improper, or inadequate.[5] (ECF No. 210.) The United States also addressed the substance of Creede's concerns in the Motion (*see id.*), of which this Court finds to be satisfactory.

Finally, in its April 7, 2021 Order, this Court also expressed interest in several pieces of additional information relating to the public interest (*see* ECF No. 194 at 15), all of which the United States satisfactorily addressed in its Motion and supports the settlement reached.

## IV. CONCLUSION

For the reasons set forth above, the Court finds the proposed Consent Decree lodged with the Court on September 9, 2020 (ECF No. 202-1) is fair, adequate, and reasonable, and is not illegal, a product of collusion, or against the public interest. Accordingly, the Court ORDERS as follows:

1. The United States' Unopposed Motion to Enter Consent Decree (ECF No. 210) is GRANTED;

2. The proposed Consent Decree (ECF No. 202-1) is APPROVED and will be signed by the Court. The Consent Decree shall be entered as a final

---

[5] "This is not an inane exercise . . . [T]he manifested willingness of the EPA to thoroughly consider all oral and written comments made with regard to the proposed decree is a key indicator of whether the decree was negotiated in good faith and is fair." *Telluride*, 849 F. Supp. at 1404–05 (internal quotation marks omitted).

7

judgment on the Court's docket, and deemed entered as of the date of this Order;

3. The Clerk of Court shall close this case, provided however, that nothing herein shall affect the terms of the Consent Decree entered this day and that the Court retains jurisdiction to enforce the terms of the Consent Decree as entered.

Dated this 29th day of June, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge